# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | 5:17-cr-00104-SVW |
| Date | March 29, 2018 |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

Interpreter

| Paul M. Cruz | N/A | N/A |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Jason Ray Jones | | X | | N/A | | | |

**Proceedings:**   IN CHAMBERS ORDER re MOTION TO SUPPRESS EVIDENCE [34]

## I.     Introduction

Defendant Jason Ray Jones ("Defendant") is charged in a single-count Indictment with being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). (Dkt. 10.) Defendant challenges the search of his car, which resulted in the discovery of a loaded .40 caliber handgun in the open center console of his car. (Dkt. 29 (Mot.) at 3-4, 6-8.) Defendant contends that the responding officer's search of his car was illegal because it was unsupported by probable cause.

## II.    Factual Background

At approximately 4:21 a.m. on May 5, 2017 San Bernardino County Deputy Sheriff Kayla Peters was dispatched to check on a suspicious vehicle at a Circle K store on Highway 18. (Declaration of Kayla Peters, ¶ 2). Deputy Peters was sent to the store in response to a call made to the sheriff's department by an employee of Circle K. (Ex. A to Defendant's Mot.). The employee of the store told the sheriff's department that a black sedan had been parked outside the store for two hours, and that the driver appeared to be asleep or intoxicated. *Id*. The radio dispatcher relayed this information to several patrol cars, including that of Deputy Peters. (Peters Decl. ¶ 2).

Upon arriving at the store, Deputy Peters observed the car parked in a handicapped parking space, even though there was no indication that the car was authorized to do so. (*Id*. at ¶ 3). Peters also observed that the VIN of the car was covered. She then approached the car and observed Defendant through the window, seeing that he had several tattoos, one of which she identified as a gang tattoo. Defendant appeared to be asleep in the driver's seat. (Id. at ¶ 4.) She tapped on the window of the car and asked Defendant for his identification. *Id*. (Defendant

contends that she did not tap on the window, but rather opened the door of the car.) Defendant identified himself as "Glenn Jones," but did not have a valid driver's license or any other form of identification. *Id*. Deputy Peters ran the name through the database in her patrol car, and discovered a criminal history for Glenn Jones including an arrest for robbery and previous probation violations. *Id*.

Peters subsequently returned to the car, and observed that Defendant had eyelid tremors which her training led her to believe were associated with methamphetamine use, and that he was talking rapidly. She further observed a monkey-face mask lying on the passenger seat of the car. (Id. ¶¶ 4-7). At this point, she asked Defendant to step out of the car so that she could conduct a pat down search. *Id*.

Peters patted Defendant down and found nothing. (Id. at ¶ 8.) She then asked Defendant about his drug use, and he admitted to having used drugs in the last few days. *Id*. Upon hearing this, she had defendant sit in the back of the patrol car while she searched his vehicle. (Id. at ¶¶ 8, 11). Defendant was supervised by Deputy McGee, who had arrived while Peters patted Defendant down. (Second Peters Decl. ¶ 16.) Peters then found a loaded handgun in the car, along with a small scale containing a substance resembling methamphetamine. *Id*.

After Peters searched the car, another officer, Sergeant Edward Bachman, arrived on the scene. (*Id*. at ¶ 11.) Sgt. Bachman had also received the dispatch call regarding Defendant's vehicle, and had decided to go assist Peters. (Bachman Decl. ¶2.) Bachman made the independent decision to go to the Circle K before he knew that Peters had searched Defendant's car or found a gun. Bachman immediately recognized Defendant as Jason Jones, as he had previously encountered him several times during his time with the police department. Defendant then admitted to Bachman that his real name was Jason Jones, that he had given an incorrect name to Peters, and that he was on parole. (*Id.* at ¶ 3). Peters then ran a record check with the correct name and discovered that Defendant Jones was on parole and had outstanding arrest warrants for parole violations. (Id. at ¶ 12). Peters then arrested Defendant for the parole violations, as well as for being a felon in possession of a firearm. (Id. at ¶ 14.)

Deputy McGee and Peters then conducted an inventory search of the car, and Defendant's vehicle was then towed, pursuant to California Vehicle Code § 22651(h)(1).[1] (Second Peters

---

[1] This statute permits impoundment of a car "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." Cal. Veh. Code § 22651.

Decl. ¶ 16.) This code section authorizes law enforcement to tow a vehicle once the driver of that vehicle has been arrested.

### III.     Discussion

At the first suppression hearing, the Court concluded that there was no probable cause to search Defendant's car for evidence of drug use or evidence of a robbery. The Court requested the parties file supplementary briefs, discussing the case of *Devenpeck v. Alford*, 543 U.S. 146 (2004) to determine if probable cause existed to search Defendant's car for *any* crime, even one that Peters did not subjectively think of. The Court concludes that there was no probable cause, but DENIES the motion to suppress based on the inevitable discovery doctrine.

1. <u>Peters Did Not Have Probable Cause to Search the Car</u>

In the case of a warrantless search, the burden is on the government to prove by a preponderance of the evidence that an exception to the warrant requirement applied and that there was probable cause for the search. *United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001). The government fails to meet this burden in this instance.

Under these circumstances, Peters' observation at night-time, through a glass window, of Defendant's twitching eyelids is insufficient to result in probable cause to search the car. Defendant's eyelid twitches could easily have resulted from the fact that he had been sleeping in his car immediately prior to the encounter. Indeed, Peters herself noticed that he had been asleep when she first approached the car. The early hour of the encounter also means that Defendant could have simply been tired. Peters also relied on the fact that she believed his speech to be unusually rapid. However, the Court's examination of the audio recording of the encounter belies this. The Court finds that Defendant's speech was controlled, coherent, and responsive and was not particularly rapid. This calls into question the reliability of Peters' testimony and declarations. Peters also relied on Defendant's admission that he used drugs two to three days ago. This does not, however, support an inference that there was evidence of drug use currently in the car.

Nor was there probable cause to search the car for evidence of a robbery. The only other evidence apparent to Peters was Defendant's arrest record (under the name Glenn Jones) and the presence of a monkey-face mask. While a suspect's reputation may contribute to probable cause, a simple arrest without a conviction is not particularly probative. *See* Wayne La Fave 2 Search &

Seizure § 3.2(d) (5th ed.). Additionally, the monkey-face mask is a completely lawful item to possess, and there was no indication that Defendant was scoping out the store for a robbery. Indeed, the 911 call indicated the store clerk was concerned that Defendant was sleeping or intoxicated—not that the store was about to be robbed. It is highly improbable that Defendant was engaged in a robbery when he had been sleeping in a parking lot for the last two hours. Lastly, while gang tattoos can contribute to a probable cause determination they cannot generate probable cause on their own. *See United States v. Luong*, 539 F. App'x 802, 803 (9th Cir. 2013).

The circumstances here certainly amounted to reasonable suspicion, but they fall short of probable cause. [2]

2. <u>The Evidence Would Inevitably Have Been Discovered</u>

Inevitable discovery is a well-recognized exception to suppression. *See Nix v. Williams*, 467 U.S. 431 (1984). Under the inevitable discovery doctrine, evidence that would normally be excluded will be admitted if the prosecution is able to show by a preponderance of the evidence that the evidence would inevitably have been discovered by lawful means. *United States v. Andrade*, 784 F.2d 1431, 1433 (9th Cir. 1986). "Circumstances justifying application of the 'inevitable discovery' rule are most likely to be present if [lawful] investigative procedures were already in progress prior to the discovery via illegal means…" Wayne LaFave, 6 Search & Seizure § 11.4(a) (5th ed.).

In the Ninth Circuit, however, this is not an absolute requirement; there need not necessarily be an independent, lawful investigation under way at the time of the illegal search for the doctrine to apply. *United States v. Boatwright*, 822 F.2d 862, 864 (9th Cir. 1987) (Kennedy, J.). The only fundamental limitation on the doctrine is that "the fact or likelihood that makes the discovery inevitable arise from circumstances other than those disclosed by the illegal search itself." *Id*. *See also* Wayne LaFave 6 Search & Seizure § 11.4(a) (5th ed.) (this is the "one *essential* limitation on the inevitable discovery doctrine") (emphasis in original).Thus, the analysis focuses on whether "by following routine procedures, the police would inevitably have uncovered the evidence." *United States v. Ankeny*, 502 F.3d 829, 835 n. 2 (9th Cir. 2007).

Here, the uncontroverted declaration of Sgt. Bachman is that upon hearing the dispatch call regarding Defendant, he decided to go assist Peters with her after seeing on his mobile computer that she was running a records check on an individual named "Jones" during a vehicle check.

---

[2] The government additionally contends that there was probable cause to arrest Defendant for parking illegally in a handicapped spot. However, handicap placards are portable, and Defendant may well have had one in a location that was not visible to Peters. Accordingly, this does not provide an adequate basis for the search and arrest.

Bachman Decl. ¶ 2. Bachman further asserts that as the watch commander for that shift he tried to "assist deputy sheriffs in the field as much as possible," and that at the point he decided to head to the Circle K, he had not been notified that Peters had conducted a search of Defendant's vehicle and found a gun. *Id*.

Thus, Bachman's decision to come to the scene was untainted by Peters' unconstitutional search of Defendant's car. Furthermore, Bachman immediately recognized Defendant as Jason Jones, because he had encountered him "numerous times" during his tenure with the police. *Id*. at ¶ 3. Bachman additionally knew that Defendant was on parole or probation at the time and "likely" had search terms. *Id*. Defendant admitted this to Bachman upon his (Bachman's) arrival at the scene and also admitted that his name was Jason Jones, not Glenn Jones. At that point, Peters ran a records search with Defendant's correct name, and discovered his outstanding arrest warrants and subsequently arrested him.

This is not simply "a hunch or speculation" as to what would have happened. LaFave, 6 Search & Seizure § 11.4(a). This chain of events demonstrates that the independent actions taken by Sgt. Bachman would have resulted in an independent, constitutional basis for Defendant's arrest.

In most cases of inevitable discovery, courts across the country have applied the doctrine in circumstances which require a series of inferences about likely outcomes and what might have happened. For example, in *United States v. Kandik*, 633 F.2d 1334 (9th Cir. 1980), a cooperating witness in counterfeiting investigation gave police the location of a cabin. Police illegally obtained a search warrant and uncovered evidence in the cabin. Based on that evidence, police found three corroborating witnesses who testified to defendant's connection with the cabin. Rejecting the defendant's argument that the testimony of the three witnesses was tainted because they might not have been located if not for the illegal search of the cabin, the court held that even without the search, it was likely that the investigators would have used the statements of the man who cooperated, and sought the same three corroborative witnesses. Accordingly, the court affirmed the defendant's counterfeiting conviction.

That sequence of events requires much more guesswork and speculation to arrive at the conclusion that the police would inevitably have uncovered the corroborating witnesses. Contrastingly, here, Bachman's actions indisputably provide an independent basis for Defendant's lawful arrest.

Here, the gun would have been found during an inventory search after Defendant's car was impounded. Law enforcement then had lawful authority pursuant to California Vehicle Code

March 29, 2018
Page 6

Section 22651(h)(1)1 to remove defendant's car, which no longer had a driver, and was also illegally parked in a disabled person parking space.

It is the "policy of [the] San Bernardino County Sheriff's Department to conduct an inventory search and list the contents of the car on [a] Vehicle Report" before the car is towed. (Second Peters Decl. ¶ 24.) Thus, an inventory search of the car would thereafter have found the gun, which was located in the center console.[3] This inference is confirmed by the fact that Deputy McGee performed an inventory of the contents of the car after Defendant was arrested. Peters Decl. ¶¶ 23-25; Ex. 5. Accordingly, the Court will not suppress the evidence.

## IV. Conclusion

The motion to suppress is DENIED. IT IS SO ORDERED.

---

[3] *See also U.S.A. v. Grigsby*, No. 2:16-CR-00055-CAS, 2016 WL 3659170, at *9 (C.D. Cal. July 6, 2016) (Snyder, J.) (denying motion to suppress when department policy was to conduct inventory search before towing car pursuant to Cal. Veh. Code § 2265(h)(1)).